UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CV-__________________

SOKOLSKYFILM, INC.,

*Plaintiff,*

v.

JAZZIZ PUBLISHING LLC, and
MICHAEL FAGIEN,

*Defendants.*

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

**JURY TRIAL DEMANDED**

Plaintiff SOKOLSKYFILM, INC., for its complaint against Defendants JAZZIZ PUBLISHING LLC and MICHAEL FAGIEN and alleges upon personal knowledge as to his own conduct, and on information and belief based on the investigation of Plaintiff's counsel, as to all other conducted alleged herein, as follows.

## I. INTRODUCTION

1. This is a case about copyright infringement under 17 U.S.C. §§ 101 *et seq*. and 505 *et seq*. caused by Defendants JAZZIZ PUBLISHING LLC and MICHAEL FAGIEN related to the copying, displaying and/or distribution of a copyrighted Photo (the "Photo") owned by Plaintiff SOKOLSKYFILM, INC.

2. Plaintiff also makes claims for copyright management information ("CMI") violations pursuant to 17 U.S.C. §§ 1202 and 1203 et. seq., for each instance the Photo was copied and displayed and the CMI information was deleted, altered, removed and/or false CMI was added by Defendants to the Photo.

## II. PARTIES

3. Plaintiff SOKOLSKYFILM, INC. ("Plaintiff" or "SOKOLSKYFILM, INC") is a California corporation.

4. Defendant JAZZIZ PUBLISHING LLC ("JAZZIZ") is a Florida limited liability company with a principal place of business at 7180 North University Drive, Tamarac in Broward County, Florida. Its registered agent can be served on Zakiya Fagien, 7610 S Cypresshead Dr., Parkland, Florida 33067.

5. Defendant MICHAEL FAGIEN ("FAGIEN") is an individual residing in Florida and is founder, editor and publisher for Defendant JAZZIZ. FAGIEN has the right and ability to control what is published by JAZZIZ and benefits from whatever is published, including the Photo.

## III. JURISDICTION AND VENUE

6. This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. §§ 101 *et seq*. and 505 *et seq*.

7. This Court has original subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (copyrights).

8. Venue is proper in this District because Defendant (1) committed copyright infringement (2) expressly aimed at the forum state of Florida, (3) and caused harm in this District to Plaintiff.

9. This District is a proper venue because Defendant JAZZIZ is based in the District and the Photo at issue was distributed on information and belief from the District.

10. Both JAZZIZ and FAGIEN can be found in the District.

11. The claims alleged also arise out of or relate to Defendant JAZZIZ's regular and systematic activities in this District, and the fact that Plaintiff would not have been injured but for Defendants' conduct that violated its rights in Miami Beach, Florida.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1400(a) (venue for copyright cases) because Defendant JAZZIZ may be found in this District.

13. This Court has *in personam* jurisdiction over Defendants because Defendants availed themselves of the privileges of conducting business in this District and the State of

Florida and Defendants incurred a benefit from such infringement of the Photo, thus it is reasonable for Defendants to submit to the jurisdiction of this Florida federal district court.

14. Defendants have regularly and systematically transacted business within Florida in connection with the matters giving rise to this suit, harming Plaintiff in the District.

## IV. FACTUAL ALLEGATIONS

### A. The Importance of Copyright and Bundle of Rights

15. Copyrights are the legal title to intellectual property by which creators of original works protect the moral and economic rights in those works.

16. Respecting and defending the financial value of a creator's copyrighted work is a bedrock principle of our democracy, so important that the Founding Fathers enshrined the Constitution with specific references to copyrights, expressly giving Congress the power to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. Article I, Section 8.

17. "Copyright law encourages people to create original works and thereby 'ultimately serves the purpose of enriching the general public through access to creative works.'" *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526 (1994).

18. The Supreme Court of the United States found that by "establishing a marketable right to the use of one's expression, copyright supplies the economic incentive to create and disseminate ideas." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 558 (1985).

19. Section 106 of the Copyright Act (the "Act") grants copyright owners the exclusive public display right and control of the economic value of their work. The Act makes it illegal to publicly perform, publicly display, distribute, or reproduce a copyrighted work except in limited instances, and provides for actual or statutory damages.

20. In 1976, the Act was amended to give creators such as Sokolsky an automatic copyright in the Photos.

21. To file suit based on an alleged infringement, that automatic copyright interest must be registered with the U.S. Copyright Office, which Plaintiff completed prior to filing suit.

**B. Background on the Copyrighted Photo**

22. Melvin Sokolsky ("Sokolsky") created the Photo of Chet Baker (the "Photo") in which Plaintiff SOKOLSKYFILM, INC. owns the copyright.

23. Sokolsky was an iconic fashion photographer who passed away in 2022. Sokolsky's estate is administered by his son, cinematographer, Bing Sokolsky, including Plaintiff SOKOLSKYFILM, INC. Melvin Sokolsky was a groundbreaking American photographer and film director, celebrated for his innovative contributions to fashion photography. Throughout his career, Sokolsky received numerous accolades, including 25 Clio Awards and a nomination from the Directors Guild, underscoring his impact on both photography and television commercials. His work has been exhibited in major museums worldwide, including the Museum of Modern Art and the Louvre, solidifying his status as a significant figure in contemporary art and fashion photography. Sokolsky's web site is found http://www.sokolsky.com/.

24. The Estate of Melvin Sokolsky, through Plaintiff SOKOLSKYFILM, INC., continues to generate income from licensing fees for his copyrighted works, which remain protected and valuable intellectual property.

25. Plaintiff SOKOLSKYFILM, INC. owns the copyright to the Photo. The Photo was registered with the US Copyright Office, bearing Registration Number TX 7-387-426, an Effective Date of February 25, 2009, under the Title "Archive." Melvin Sokolsky authored the Photo at issue. A copy is shown here:



**C. Defendant and infringement of the Photo.**

26. On or about January 11, 2021, Defendants copied, distributed and displayed the Photon in an article to benefit all Defendants, without authorization from Plaintiff.

27. In the copying, distribution and display, on information and belief, Defendants and their agents deleted Plaintiff's copyright management information in order to knowingly enable infringement, and hide Sokolsky's name.

28. Sometime in October 2024, Plaintiff discovered that a copy of its Photo was being unlawfully displayed by Defendants on their website (and possibly in print). The following links contained a copy of the Photo: https://jazziz.com/chet-baker-soul-david-bowie-more-the-week-in-jazz/ and https://jazziz.com/wp-content/uploads/2021/01/chet2-1024x595.jpg

29. Screenshots of infringement: can be seen here:


https://jazziz.com/chet-baker-soul-david-bowie-more-the-week-in-jazz/ 13 de octubre de 2024, 18:22 GMT-3

SUBSCRIBE JAZZIZ LOG IN

READ LISTEN WATCH EDITIONS JOIN VINYL CLUB JAZZIZ DISCOVERY INSIDE TRACK STORE CUSTOMER SERVICE MY ACCOUNT

FEATURES — JANUARY 11, 2021

Chet Baker, Soul, David Bowie & More: The Week in Jazz

by MATT MICUCCI

CHET

*The Week in Jazz is your roundup of new and noteworthy stories from the jazz world. It's a one-stop destination for the music news you need to know. Let's take it from the top.*

ADVERTISEMENT

VAL GARDENA

The In Between Time

SUBSCRIBE TO JAZZIZ NOT WHAT YOU THINK PODCAST

ADVERTISEMENT

ADVERTISEMENT

LATEST INSIDE TRACK ALBUMS

Joe Elefante's Wheel of Dharma

30. On or about November 20, 2024, Plaintiff, through counsel, sent a takedown notice to Defendant JAZZIZ.

31. Despite a takedown notice, JAZZIZ has refused to reasonably compensate Plaintiff for the unauthorized use of the Photo.

32. JAZZIZ is no stranger to copyright infringement, having been sued at least twice in the last two years and on information and belief, resolving claims that did not result a in a case being filed.

31. Each display of the Photo was unauthorized, with each medium (website, print etc.) requiring a separate license as Plaintiff generally only licenses its works under a "rights-managed" licensing model.

32. Under the actual damages suffered by Plaintiff, he is entitled to seek a separate award of damages for each medium (website, print, catalogue, social media channel, video) the Photo was used by Defendants for the equivalent of the fair market value for a license using the industry standard of a one-year license, multiplied by each year the Photo was displayed (with each fraction of a year (i.e., one month) commanding full, one-year licensing fees under a "rights managed" model (as opposed to a "royalty-free" license) and for the print version.

33. Plaintiff in this 17 U.S.C. § 504(b) action can therefore establish a causal connection and relationship between the infringements, the revenue generated from the infringements, and the monetary remedy sought under the Act, which is neither speculative nor arbitrary.

34. Actual damages should be awarded to Plaintiff from advertising revenue, and the hypothetical-license value, which constitute an acceptable and recognized form of "actual damages" recoverable under Section 504(b).

35. Where an infringer of a protected work, instead of obtaining permission and paying an agreed licensing fee, proceeds to use that work without permission and without compensating the copyright owner, the copyright owner (e.g., Plaintiff) suffers damages, because Plaintiff was legally entitled to exact a fee for such uses.

36. Whether the infringing Defendants might in fact have negotiated with Plaintiff or purchased at the Plaintiff's price is irrelevant to whether hypothetical-license damages are available.

37. Hypothetical-license damages also assume rather than require the existence of a willing seller and willing buyer. The very word "hypothetical" indicates that damages may be awarded in the absence of an actual license.

38. Plaintiff's damages are also measured and determined by the fair market value of license fees by looking at established rates that are regularly paid by licensees in the market.

39. The calculation of a reasonable licensing fee for use of Plaintiff's Photo must be based on such factors as the type of use, size of use, medium, and circulation.

40. Plaintiff may also elect to seek statutory damages under the Copyright Act.

41. On information and belief, Defendants also more likely than not committed a Copyright Management Information (CMI) violation related to her uses and distribution of the Photo because the Photo's metadata information (and other information such as Sokolsky's name) associated with the digital files of the Photo were likely deleted or altered from all the displays and/or false CMI was added to the copy of the Photos that were distributed by Defendants more likely than not for the purpose of preventing Plaintiff from discovering those displays and/or enabling infringements. See 17 U.S. Code § 1203(3)(B). Each CMI violation carries a minimum award of $2,500 to a maximum award of $25,000, along with reasonable attorney fees.

42. On information and belief, Defendants intended to commit infringement and knowingly supplied false CMI that enabled infringement.

43. On information and belief, Plaintiff alleges that Defendants removed and/or altered Sokolsky's CMI and/or added and supplied false CMI to the Photo with a reasonable basis to know that the removal, alteration and addition of false CMI would prevent or hinder Plaintiff's ability to discover the infringement(s).

44. Despite making a demand to be compensated, take down all unauthorized displays and for Defendant to share an accounting of all displays and revenue generated from the use of the Photos, Defendant has ignored Plaintiff's efforts.

45. Given the position of Defendants and lack of any license agreement between Defendants and Plaintiff or any no cognizable defense, Plaintiff had no choice but to file suit to protect Plaintiff's rights and seek fair and just compensation.

## V. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**(Infringement of Copyrights (17 U.S.C. §§ 106, 501)**

46. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

47. Plaintiff owns a valid copyright registration in the Photo.

48. Plaintiff never provided authorization to Defendant or their partners, owners, agents, licensees, affiliates, employees, contractors, customers, or subscribers to use, copy, publicly display, distribute, license, manipulate, or otherwise commercially exploit the Photo.

49. Defendants have directly infringed Plaintiff's copyright in the registered Photo, by using, copying, publicly displaying, distributing, licensing, manipulating, or otherwise commercially exploiting the Photos, without Plaintiff's authorization.

50. Defendants have caused damages to Plaintiff from copyright infringement of the Photo and who each had the right and ability to take down the Photos after notifications.

51. Defendants had actual knowledge of the infringement of the Photo and materially contributed and caused infringement once Plaintiff sent notice that Defendants was not allowed to display, distribute, and publish the Photo.

52. Defendants are vicariously liable for its respective employees', retailers, contractors' and/or agents' infringement of the Photo as alleged above.

53. Defendants knew or had reason to know of their respective employees, contractors, and agents' infringement and intentionally induced and/or materially contributed to such infringement.

54. Defendants knew or had reason to know of, and materially contributed to the infringement of those to whom each copied, distributed and/or displayed the Photos.

55. Defendants is contributorily liable for their respective employees', contractors', all other Defendants and agents' infringement.

56. Defendants are secondarily liable for their respective employees, contractors, Downstream Infringers and agents' infringement.

57. Plaintiff has suffered actual damages as a direct and proximate result of Defendants' direct and secondary infringement.

58. Plaintiff is entitled to recover damages based on it actual damages suffered as a result of Defendant's infringements and the disgorgement of Defendants' profits attributable to the infringements, pursuant to 17 U.S.C. § 504(b), which amounts will be proven at trial, as well as any licensing fee that Plaintiff could have received if Defendants secured a valid license to the Photo.

59. Pursuant to 17 U.S.C. § 504(c)(2), as a result of Defendants' infringement of Plaintiff's exclusive rights in the Photo, Plaintiff is entitled to recover statutory damages up to a maximum amount of $150,000 pursuant to 17 U.S.C. § 504(c)(1).

60. Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

61. Defendants' conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff, unless enjoined by this Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive copyrights in the Photo by the Defendant and all persons acting in concert with the Defendant.

## SECOND CAUSE OF ACTION

### Violations of Copyright Management Information

### Under 17 U.S.C. §§ 1202 & 1203

62. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

63. On information and belief, Defendants found the Photo either on Plaintiff's website or another site.

64. Defendants either visited Plaintiff's website and copied the Photo, deleting Plaintiff's CMI from the Photo (the metadata and name) and/or added false copyright management information provided in connection with the reproduction, distribution, and public display and of the Photos on Defendants' website, social media and/or print and the distribution of the Photo and was Defendants intended to facilitate or conceal the infringement of Plaintiff's exclusive copyright.

65. On information and belief, Defendants intended the false copyright management information to induce the public to believe that Defendant had permission to use Plaintiff's Photos, as opposed to Plaintiff, the copyright owner.

66. Defendants' actions constituted willful and deliberate violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1202(a).

67. On information and belief, Defendants knew that their use of the false attribution and/or deleting of Plaintiff's CMI under 17 U.S.C. § 1202 (a) was "False Copyright Management Information," and Defendant, in violation of the law, knowingly and with the intent to induce, enable, facilitate, or conceal infringement, (1) provided copyright management information that Defendant knew was false, and/or despite this knowledge, (2) distributed copyright management information that is false by falsifying the metadata of the Photo.

68. Discovery will show from the metadata that Defendants were charged with preserving when it first changed, deleted, and/or added false CMI to the Photos.

69. Defendants are also liable under 17 U.S.C. § 1202 (b) for "Removal or Alteration of Copyright Management Information" because Defendants, without the authority of the copyright owner, Plaintiff, (1) intentionally removed or altered any copyright management information, such as Plaintiff's name and/or metadata, and (2) Defendants distributed false copyright management information knowing that the copyright management information had been removed or altered without authority of the copyright owner, Plaintiff, or knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that

Defendants' conduct will induce, enable, facilitate, or conceal an infringement of any right under this title.

70. By reason of Defendants' CMI violation(s), Plaintiff has suffered damages and is entitled to recover its actual damages and to disgorge any additional profits of Defendants attributable to the violations, pursuant to 17 U.S.C. § 1202(c)(2).

71. Alternatively, and at Plaintiff's sole discretion exercised any time prior to entry of final judgment, Plaintiff is entitled to recover statutory damages in an amount between $2,500 and $25,000 *per violation* of the Digital Millennium Copyright Act, pursuant to 17 U.S.C. § 1203(c)(3)(B) for at least two (2) CMI violations. Discovery may show more violations than are unknown to Plaintiff at this time.

72. Further irreparable harm is imminent as a result of Defendants' conduct, and Plaintiff is without an adequate remedy at law. Plaintiff is therefore entitled to an injunction, in accordance with 17 U.S.C. § 1203(b), restraining Defendants', its officers, directors, agents, employees, representatives, assigns, and all persons and entities acting in concert with Defendants from engaging in further violations of the Digital Millennium Copyright Act.

73. Plaintiff is entitled to recover costs and attorneys' fees in accordance with 17 U.S.C. § 1203(b)(4) and (5).

## VI. RELIEF REQUESTED

74. Wherefore, Plaintiff prays for judgment against Defendants as follows:

a. Awarding Plaintiff damages derived from the infringing acts, including actual damages for copyright.

b. Awarding Plaintiff damages derived from the infringing acts for statutory damages for copyright infringement in the exact amount of $150,000.

c. Awarding Plaintiff damages derived for each CMI violation of $25,000.

d. Granting Plaintiff injunctive and other equitable relief enjoining Defendants, its respective officers, agents, vendors, servants, and employees, and all those acting in concert, from directly or indirectly

reproducing, publicly performing, publicly displaying, or distributing the copyrighted Photo to which Plaintiff has exclusive rights.

e. Disgorging all profits derived by that were obtained as a result of the conduct alleged herein.

f. Awarding prejudgment interest to the maximum extent permitted by law.

g. Awarding Plaintiff's attorneys' fees, costs, and expenses.

h. Awarding such other and further relief that is just and proper.

## VII. JURY TRIAL DEMANDED

75. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff respectfully demands a trial by jury of all the claims asserted in this Complaint so triable.

Dated: January 6, 2025

Respectfully Submitted,

DUNCAN FIRM, P.A.

*/s/ James H. Bartolomei III*
James H. Bartolomei III
Of Counsel
809 W. 3rd Street
Little Rock, Arkansas 72201
Tel.: (501) 228-7600
Fax: (501) 228-0415
james@duncanfirm.com

*Counsel for Plaintiff SOKOLSKYFILM, INC.*